# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| VERSATEX, LLC, et al., | : | Case No. 1:23-cv-184 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| DURACELL MANUFACTURING, LLC, | : | |
| | : | |
| Defendant. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion to Dismiss and for a More Definite Statement (Doc. 10). Plaintiffs filed a Response in Opposition (Doc. 12), to which Defendant filed a Reply in Support (Doc. 13). Thus, this matter is ripe for the Court's review. For the reasons below, Defendant's Motion (Doc. 10) is **GRANTED IN PART AND DENIED IN PART**.

### FACTS AND PROCEDURAL POSTURE

This case arises from allegedly unpaid invoices for services. Plaintiffs Versatex, LLC and XLC Services, LLC are Ohio corporations that provide supply chain and temporary labor management services. (Am. Compl., Doc. 9, ¶¶ 1, 9.) Both Versatex and XLC are wholly owned subsidiaries of d.e. Foxx & Associates, Inc. and share the same principal place of business in Cincinnati, Ohio. (*Id.* at ¶¶ 1, 2, 8.)

On October 1, 2014, The Procter & Gamble Company ("P&G") and Versatex entered into a Master Professional Services Agreement ("Agreement"). (Am. Compl., Doc. 9, ¶ 5.) When the Agreement was executed, P&G owned Duracell International, Inc. (*Id.* at ¶ 13.) Pursuant to the Agreement, Versatex provided a variety of temporary labor services to P&G. (*Id.* at ¶ 1.) As Versatex's subcontractor, XLC delivered temporary employees to P&G pursuant to the Agreement. (*Id.* at ¶¶ 2, 11.) In 2016, P&G divested Duracell to Berkshire Hathaway, Inc. and Duracell fully assumed P&G's obligations under the Agreement. (*Id.* at ¶¶ 15-16). Plaintiffs continued to provide services to Duracell following the divestment. (*Id.* at ¶ 17.) Plaintiffs provided these services to Defendant and its predecessors at facilities in LaGrange, Georgia and Lancaster, South Carolina. (*Id.*)

Several provisions of the Agreement are relevant here. First, Ohio law governs the Agreement. (Agreement, Doc. 9, Pg. ID 627.) Next, the Agreement includes a forum selection clause, which reads, in pertinent part:

> Each Party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in state or federal courts located in Cincinnati, Ohio, and each Party irrevocably submits to the sole and exclusive jurisdiction of these courts in personam, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other Party.

(*Id.* at Pg. ID 626.)

Lastly, the Agreement's Third Party Beneficiaries section provides that:

> Except as expressly provided herein, this Agreement is entered into solely between, and may be enforced only by, P&G and Provider. This Agreement shall not be deemed to create any rights or causes of action in or on behalf

2

of any third parties, including without limitation employees, Providers and customers of a Party, or to create any obligations of a Party to any such third parties.

(*Id.* at Pg. ID 631.)

After rendering services to Defendant and its predecessors under the Agreement, Plaintiffs submitted invoices for payment. (Am. Compl., Doc. 9, ¶ 18.) Numerous invoices included the phrase, "please remit payment to XLC Personnel Services." (*See, e.g.,* Invoices, Doc. 10-4, Pg. ID 967.) Defendant and its predecessors allegedly failed to pay certain invoices that Plaintiffs submitted under the Agreement. (Am. Compl., Doc. 9, ¶ 19.) In total, Defendant allegedly owes Plaintiffs $541,371.15 in unpaid invoices. (Invoice List, Doc. 9, Pg. ID 642.) On March 14, 2023, Plaintiffs brought this action in Hamilton County Court of Common Pleas against Defendant. (*See* Notice of Removal, Doc. 1.) On April 3, 2023, Defendant removed the matter to this Court. (*Id.*) Plaintiffs filed an Amended Complaint on May 15, 2023, bringing claims against Defendant for breach of contract, unjust enrichment, and quantum meruit. (Am. Compl., Doc. 9.)

## LAW & ANALYSIS

Defendant now submits the present motion. First, Defendant moves to dismiss all of XLC's claims, arguing that the Court lacks personal jurisdiction over Defendant regarding XLC's claims. (Motion to Dismiss, Doc. 10, Pg. ID 654-62.) In the event this Court finds personal jurisdiction, Defendant moves to dismiss XLC's breach of contract claim. (*Id.* at Pg. ID 668-69.) Next, Defendant seeks dismissal of all claims for damages for unjust enrichment and quantum meruit that accrued before June 25, 2015, claiming that such damages are barred by the statute of limitations. (*Id.* at Pg. ID 665-68.) Lastly,

3

Defendant moves for Plaintiffs to file a more definite statement. (*Id.* at Pg. ID 663-64.) The Court will consider each in turn.

## I.      Personal Jurisdiction over Defendant with Respect to XLC's Claims

The Court will first consider whether it has personal jurisdiction over Defendant as it pertains to XLC's claims. Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to move for dismissal based on lack of personal jurisdiction. Of particular relevance here, "[p]ersonal jurisdiction must be analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant through "specific facts." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). In considering a motion to dismiss for lack of personal jurisdiction, a court may: (1) rule on the motion based on affidavits submitted by the parties; (2) permit jurisdictional discovery; or (3) hold an evidentiary hearing to resolve the motion. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). At this time, the Court will consider the motion based on the submissions by the parties.

"Where the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Theunissen*, 935 F.2d at 1458 (emphasis omitted). The plaintiff must demonstrate "'with reasonable particularity' that the defendant's contacts with the forum state 'support jurisdiction.'" *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp.

3d 759, 767 (S.D. Ohio 2022) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).

In determining whether plaintiff has met its burden, courts consider the pleadings and affidavits "in a light most favorable to the plaintiff." *Theunissen*, 935 F.2d at 1459. The court may consider the defendant's undisputed assertions, but when "facts proffered by the defendant conflict with those offered by the plaintiff, a district court does not consider them." *Olin-Marquez*, 586 F. Supp. at 767 (citations omitted). However, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929-30 (6th Cir. 1974)).

Defendant argues that this Court lacks personal jurisdiction over Defendant as to XLC's claims. (Motion to Dismiss, Doc. 10, Pg. ID 654-62.) XLC does not contest that this Court lacks specific or general jurisdiction over Defendant as it relates to XLC's claims. Rather, XLC asserts that this Court has personal jurisdiction over Defendant through the Agreement's forum selection clause because XLC served as Versatex's subcontractor. (Response in Opp., Doc. 12, Pg. ID 973-75.)

The Agreement's forum selection clause reads, in pertinent part:

Each Party irrevocably agrees that any legal action, suit or proceeding brought by it in any way arising out of this Agreement must be brought solely and exclusively in state or federal courts located in Cincinnati, Ohio, and each Party irrevocably submits to the sole and exclusive jurisdiction of these courts in personam, generally and unconditionally with respect to any action, suit or proceeding brought by it or against it by the other Party.

5

(Agreement, Doc. 9, Pg. ID 626.) Under its plain language, the forum selection clause extends to suits arising from the Agreement and brought by a "Party" to the Agreement. The "Parties" are defined in the Agreement as "P&G and Provider," with "Provider" defined as "Versatex, LLC." (*Id*. at Pg. ID 580.) It is undisputed that XLC is not a named "Party" or signatory to the Agreement. (*Id*. at Pg. ID 580, 633.)

Forum selection clauses are generally "unenforceable against a person or entity who was not a party to the contract." *Highway Com. Servs., Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008) (quoting *WashPro Express, LLC v. VERwater Env't, LLC*, No. CA2006-03-069, 2007 WL 641425, at *1 (Ohio Ct. App. 2007)). Yet, a non-signatory to a contract may be bound by a forum selection clause if the non-signatory is sufficiently "closely related" to the dispute that it is foreseeable that the party will be bound. *See Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997); *Zitis*, 2008 WL 1809117, at *4. Courts apply "a common sense, totality of the circumstances" approach to the "closely related" test. *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-cv-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010).

The principal consideration under the "closely related" test is "whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Regions Bank*, 2010 WL 908753, at *6. Common situations in which a non-signatory may be bound include "corporations wholly owned and controlled by a signatory" and third-party beneficiaries to the contract. *Zitis*, 2008 WL 1809117, at *4 (citations omitted).

6

The "closely related" test is employed to determine not only if a non-signatory is bound by the forum-selection clause but also if a non-signatory may enforce the clause. *See Holtzman v. Vill. Green Mgmt. Co. LLC*, No. 2:19-cv-11150, 2020 WL 264331, at *8 (E.D. Mich. Jan. 17, 2020) (collecting cases). In this case, Plaintiff XLC is a non-signatory to the Agreement and seeks to enforce the forum selection clause against Defendant. The case law on non-signatory plaintiffs seeking to enforce a forum selection clause is sparse. That said, several courts confronted with this situation have applied the "closely related" test. *See, e.g., Casville Invs., Ltd. v. Kates*, No. 12-cv-6968 RA, 2013 WL 3465816, at *5 (S.D.N.Y. July 8, 2013) (applying the "closely related" test for non-signatory plaintiffs seeking to enforce forum selection clause against signatory defendant); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015) ("We find that the non-signatory plaintiffs are closely related to [a signatory entity] so that it would be foreseeable to defendants that they would enforce the clause."). So, the Court will apply the "closely related" test here.

As detailed more fully below, the Court finds that XLC can enforce the forum selection clause. Perhaps most importantly, XLC's claims arose from fulfilling Versatex's obligations under the Agreement as Versatex's subcontractor. The fact that XLC and Versatex are owned by the same parent company only further supports this conclusion. And, while the Agreement's third-party beneficiary language cuts against XLC's ability to enforce the forum selection clause, it is not dispositive. Simply put, under the totality of the circumstances, XLC was closely related to the dispute and the Agreement such that it was reasonably foreseeable that XLC would be bound by the forum selection clause.

### a. XLC's Claims Arose from Fulfilling Versatex's Obligations Under the Agreement

The fact that XLC's claims arose from fulfilling Versatex's obligations under the Agreement weighs heavily in favor of XLC's ability to enforce the forum selection clause. Under the "closely related" test, courts consider both the connection of the non-signatory to the forum selection clause and the dispute at hand. *See, e.g., Reagan v. Maquet Cardiovascular U.S. Sales LLC*, No. 1:14-cv-548, 2015 WL 521049, at *4 (N.D. Ohio Feb. 9, 2015) (holding that "as a result of being 'closely related' to the Agreement and current dispute, the Agreement's forum selection clause may be enforced"). XLC's connection with Defendant—as well as this dispute—arose from XLC fulfilling the Agreement as Versatex's subcontractor. (Am. Compl., Doc. 9, ¶¶ 5, 11.)

This case is analogous to *Mahan v. Core Values Roadside Serv., LLC*, No. 1:19-cv-480, 2020 WL 1291589 (S.D. Ohio Mar. 18, 2020). In that case, Plaintiff Mahan assisted her fiancé, Plaintiff Linz, in providing roadside assistance services under an agreement that Linz (but not Mahan) signed with Defendant Core Values. *Id.* at *1. Specifically, Mahan communicated with Core Values to help manage dispatches for Linz. *Id.* at *3. Both Mahan and Core Values understood "that they were in contact with one another through, and because of, the agreement." *Id.* Although Mahan never signed the agreement between Linz and Core Values, this Court held that she was bound by its forum selection clause because her connection to the defendant "arose from the agreement" and she "played an integral part in helping Plaintiff Linz fulfill his obligations under the agreement." *Id.*

Similarly, XLC's connection to Defendant arose from the Agreement between Versatex and Defendant. As Versatex's subcontractor, XLC played an integral role in helping Versatex fulfill its obligations under the Agreement. XLC submitted invoices to Defendant after providing services under the Agreement. (Am. Compl., Doc. 9, ¶ 18.) Defendant does not contest that it "remitted payment to XLC" and "communicated with XLC." (Motion to Dismiss, Doc. 10, Pg. ID 662.) Some invoices sent to Defendant even included the phrase, "please remit payment to XLC Personnel Services." (*See, e.g.*, Invoices, Doc. 10-4, Pg. ID 967.) These circumstances made it reasonably foreseeable to XLC, Versatex, and Defendant "that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *6 (M.D. Tenn. Mar. 12, 2010).

#### b. XLC and Versatex are Owned by the Same Company

XLC's close relationship with Versatex underscores XLC's ability to enforce the forum selection clause. XLC and Versatex are both wholly owned by d.e. Foxx & Associates. (Am. Compl., Doc. 9, ¶ 8.) Courts have often bound non-signatories to forum selection clauses if the signatory owned or operated the non-signatory. *See, e.g., Highway Com. Servs., Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008) ("Corporations wholly owned and controlled by a signatory to a contract may also be bound by a forum selection clause."). Of course, Versatex—not the entity owning both Versatex and XLC—signed the Agreement. (Agreement, Doc. 9, Pg. ID 633.) And the fact that XLC and Versatex share a parent company, standing alone, is not necessarily determinative. *See Ford Motor Co. v. Kawasaki Kisen Kaisha Ltd.*, No. 21-cv-10119, 2023 WL

9

5049251, at *15 (E.D. Mich. Aug. 8, 2023). Nevertheless, the relationship between XLC and

Versatex cuts in favor of XLC's ability to enforce the forum selection clause.

### c. The Agreement's Third-Party Beneficiary Language

Finally, the Agreement's third-party beneficiary language does not preclude XLC

from enforcing the forum selection clause. The Agreement's Third Party Beneficiaries

section provides that:

> Except as expressly provided herein, this Agreement is entered into solely
> between, and may be enforced only by, P&G and Provider. This Agreement
> shall not be deemed to create any rights or causes of action in or on behalf
> of any third parties, including without limitation employees, Providers and
> customers of a Party, or to create any obligations of a Party to any such third
> parties.

(Agreement, Doc. 9, Pg. ID 631.)

While this language may speak to the foreseeability of non-signatories enforcing

the forum selection clause, it is not dispositive. The District Court for the Northern

District of Ohio recently wrestled with a non-signatory seeking to enforce a forum

selection clause with similar third-party beneficiary language. *See Smith v. Swaffer*, 566 F.

Supp. 3d 791 (N.D. Ohio 2021). In *Swaffer*, the Court applied the "closely related" test and

held that it was "reasonably foreseeable that [the non-signatory defendant], one of the

only people related to and an officer of [signatory company] with whom Plaintiffs had

dealings, would seek to enforce the forum-selection clause . . . notwithstanding its third-

party beneficiary language." *Id.* at 800. The Court makes a similar finding here.

Considering XLC's role in fulfilling Versatex's obligations under the Agreement—

alongside XLC's close relationship with Versatex—the third-party beneficiary language does not foreclose XLC from enforcing the forum selection clause.

*    *    *

Based on the totality of the circumstances, the Court finds that XLC is so closely related to the dispute and Versatex such that it would be foreseeable for XLC to enforce the forum selection clause. As XLC is entitled to enforce the forum selection clause of the Agreement against Defendant, the Court has personal jurisdiction over Defendant as it relates to XLC's claims.

## II.    Failure to State a Claim for Relief Against Defendant

The Court next turns to Defendant's request to dismiss certain claims under Federal Rule of Civil Procedure 12(b)(6). (*See* Motion to Dismiss, Doc. 10, Pg. ID 665-69.) Rule 12(b)(6) allows, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss tests the plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Courts accept all allegations of material fact as true and must construe such allegations in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). Courts are not bound to do the same for a complaint's legal conclusions. *Id.* at 555. Thus, surviving a motion to dismiss is a matter of pleading sufficient factual content. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)). A claim for relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678 (quotation omitted). A complaint that lacks such plausibility warrants dismissal. *Id.*

11

### a. XLC's Breach of Contract Claim

First, the Court considers Defendant's argument that XLC's breach of contract claim should be dismissed because XLC is neither a party to the contract nor an intended beneficiary. (Motion to Dismiss, Doc. 10, Pg. ID 668-69.)

Ohio law governs the Agreement. (Agreement, Doc. 9, Pg. ID 627.) Under Ohio law, "[o]nly a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract." *Gant Thornton v. Windsor House, Inc.*, 566 N.E.2d 1220, 1223 (Ohio 1991). The Agreement does not mention XLC by name, and Plaintiffs do not allege that XLC was a party under the Agreement. (Agreement, Doc. 9, Pg. ID 580, 633.) Thus, the question becomes: was XLC an intended third-party beneficiary to the Agreement?

Ohio courts apply Section 302 of the Restatement (Second) of Contracts to determine whether a party is an intended or incidental third-party beneficiary. *Hill v. Sonitrol of Sw. Ohio, Inc.*, 521 N.E.2d 780, 784 (Ohio 1988). The Restatement provides:

    (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

        (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

        (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

    (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

12

Restatement (Second) of Contracts § 302 (1981). Intended third-party beneficiaries have enforceable rights under a contract. *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3, 7 (Ohio 2011) (quotation omitted). Incidental third-party beneficiaries do not. *Id.*

The plain language of a contract often resolves the question of intent. *See Shifrin v. Forest City Enters., Inc.*, 597 N.E.2d 499, 501 (Ohio 1992) ("Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement."). Consequently, "[c]ontracting parties may [] limit who may sue under their contract by expressly 'otherwise agree[ing]' to exclude all third parties from acquiring or invoking any rights under a contract." *Long v. Mount Carmel Health Sys.*, 93 N.E.3d 436, 443 (Ohio Ct. App. 2017) (quotation omitted). That is precisely what the parties did here.

Again, the Agreement's Third Party Beneficiaries section provides that:

> Except as expressly provided herein, this Agreement is entered into solely between, and may be enforced only by, P&G and Provider. This Agreement shall not be deemed to create any rights or causes of action in or on behalf of any third parties, including without limitation employees, Providers and customers of a Party, or to create any obligations of a Party to any such third parties.

(Agreement, Doc. 9, Pg. ID 631.) Considering the Agreement's explicit language, XLC is not an intended beneficiary and cannot bring suit under the Agreement. After all, "courts applying Section 302 honor contractual provisions that explicitly disclaim the creation of any third-party beneficiaries." *Long*, 93 N.E.3d at 443 (collecting cases). The mere fact that Plaintiffs allege XLC acted as a subcontractor is insufficient to overcome this express language. Thus, XLC is not an intended third-party beneficiary and cannot bring an action on the Agreement. In turn, XLC's breach of contract claim must be dismissed.

**b. Statute of Limitations**

Defendant next argues that Plaintiffs' claims for unjust enrichment and quantum meruit are barred, in part, by the statute of limitations and should be dismissed. (Motion to Dismiss, Doc. 10, Pg. ID 665.)

A motion to dismiss is generally an "inappropriate vehicle for dismissing a claim based upon a statute of limitations." *Lutz v. Chesapeake Appalachia, LLC,* 717 F.3d 459, 464 (6th Cir. 2013) (quotation omitted). Statute of limitations defenses are "more appropriately addressed in the context of a summary judgment motion or at trial if disputed issues of fact exist relating, for example, to accrual dates . . . ." *In re Nat'l Prescription Opiate Litig.,* 440 F. Supp. 3d 773, 787 (N.D. Ohio 2020). But dismissal is warranted when "the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.,* 676 F.3d 542, 547 (6th Cir. 2012); *see also Allen v. Andersen Windows, Inc.,* 913 F. Supp. 2d 490, 500 (S.D. Ohio 2012).

Granting Defendant's motion to dismiss based on the statute of limitations would be premature.[1] Factual questions regarding which specific claims accrued when and where remain unanswered. For example, while Defendant included a list of the invoices accruing before June 25, 2015 and each specific accrual date, the partial list does not include where the services were rendered. (*See* Defendant's Invoice List, Doc. 10-4, Pg. ID

---

[1] Defendant also raised, through footnote, a choice of law issue within this section of its motion. (Motion to Dismiss, Doc. 10, Pg. ID 665.) Because the issue was not fully briefed, and addressing such issue is unnecessary to fully adjudicate the motion, the Court finds ruling on this question to be premature at this time. *See McGraw-Hill Cos., Inc. v. CA Jones Mgmt. Grp., LLC,* No. 5:14-cv-00042, 2014 WL 12657263, at *1 (W.D. Ky. Mar. 31, 2014) (explaining that a choice of law analysis "is likely premature" since "neither party has addressed the issue" and it is "uncertain whether a dispute exists on this issue").

14

682-84.) Discovery is necessary to reveal such information. *See, e.g., Woodall v. Wayne Cnty.*, 590 F. Supp. 3d 988, 997 (E.D. Mich. 2022), *reconsideration denied*, No. 17-13707, 2022 WL 1469210 (E.D. Mich. May 10, 2022) (Although the complaint did not allege specific dates, "having now had the benefit of discovery and a chance to further investigate and develop the relevant facts, [defendant] may once again present her statute-of-limitations defense to this Court."). Accordingly, the Court will not dismiss Plaintiffs' claims for unjust enrichment and quantum meruit as time barred.

### III. More Definite Statement

Finally, the Court will consider Defendant's motion for Plaintiffs to provide a more definite statement. (Motion to Dismiss, Doc. 10, Pg. ID 663-64.) Federal Rule of Civil Procedure 12(e) permits a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." A motion for a more definite statement is generally disfavored by courts. *BAC Home Loans Serv. LP v. Fall Oaks Farm LLC*, No. 2:11–cv–274, 2011 WL 6749066, *3 (S.D. Ohio Dec. 22, 2011) (citation omitted). In other words, "a [m]otion for more definite statement is granted only when the pleading is so vague that it is unreasonable to expect that a responsive pleading may or can be framed." *Sky Techs. Partners, LLC v. Midwest Rsch. Inst.*, 125 F. Supp. 2d 286, 298 (S.D. Ohio 2000) (quotation omitted). "A motion for a more definite statement should not be used as a substitute for discovery." *Schwable v. Coates*, No. 3:05-cv-7210, 2005 WL 2002360, *1 (N.D. Ohio 2005).

15

Defendant contends that Plaintiffs (1) present allegations that are "conclusory, ambiguous, and vague," (2) "improperly plead that 'the Plaintiffs' collectively performed unspecified services, without further explanation or differentiation" and (3) present legal claims that "are inappropriately intertwined." (Motion to Dismiss, Doc. 10, Pg. ID 663-64.) Plaintiffs counter that the Amended Complaint is not unintelligible and that Defendant may conduct discovery to fill in any gaps. (Response in Opp., Doc. 12, Pg. ID 975.)

The Amended Complaint provides fair notice of the allegations against Defendant such that Defendant has a reasonable ability to respond. This action arises out of the Agreement, which is attached to the Amended Complaint. (Am. Compl., Doc. 9, ¶ 5; Agreement, Doc 9, Pg. ID 578-633.) The Amended Complaint also includes a list of the specific invoices submitted by Plaintiffs that were allegedly unpaid by Defendant. (Invoice List, Doc. 9, Pg. ID 635-42.) And, the list specifically displays the customer number, invoice number, amount, and which Plaintiff—Versatex or XLC—corresponds to each invoice. (*Id.*) In light of this specificity, the Amended Complaint is not "so vague that it is unreasonable to expect that a responsive pleading may or can be framed." *Sky Techs. Partners*, 125 F. Supp. 2d at 298 (quotation omitted).

The Court disagrees with Defendant's contention that Plaintiffs' claims are improperly pled collectively and inappropriately intertwined. This matter is distinguishable from the cases that Defendant cites to support this argument. First, in *Grove v. Mohr*, the Court granted a motion for a more definite statement after concluding that the complaint was "unintelligible because it refers to Defendants as a collective and

16

does not indicate how each Defendant's individual conduct violated Plaintiff's constitutional rights." *Grove v. Mohr*, No. 2:18-cv-1492, 2020 WL 1242395, at *3 (S.D. Ohio Mar. 16, 2020). Here, because each of Plaintiffs' claims are directed at a sole defendant and the allegations are not unintelligible, the Amended Complaint does not suffer from the same shortcomings. Second, in *Ortiz v. Ocwen Loan Servicing, LLC*, the Court granted a motion for a more definite statement because "the claims of negligence [were] intertwined with federal claims . . . and should be separated so that all are clear as to the specific causes of action." *Ortiz v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-1050, 2014 WL 5037209, at *3 (N.D. Ohio Oct. 8, 2014). The causes of action in the Amended Complaint are unambiguous; Counts II (Unjust Enrichment) and III (Quantum Meruit) are asserted in the alternative to Count I (Breach of Contract). (Am. Compl., Doc. 9, ¶¶ 26-45.) Thus, the Court is unpersuaded by Defendant's arguments.

Further, the Court finds that the damages alleged are not improperly intertwined. Defendant argues that Plaintiffs "fail to parse out the damages attributable to one entity or the other, again inappropriately lumping their legal claims together and claiming the exact same damages in excess of $540,000." (Reply in Support, Doc. 13, Pg. ID 988.) But Exhibit B, attached to the Amended Complaint, distinguishes between whether each invoice amount was attributed to Versatex or XLC. (Invoice List, Doc. 9, Pg. ID 635-42.) Thus, the Amended Complaint provides sufficient notice as to the damages relating to each Plaintiff.

17

In sum, because the Amended Complaint is not so vague that it would be unreasonable to expect Defendant to frame a responsive pleading, Defendant's motion for a more definite statement must be denied.

## CONCLUSION

For the reasons above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss and for a More Definite Statement (Doc. 10). Plaintiff XLC Services, LLC's breach of contract claim is **DISMISSED WITH PREJUDICE**. Plaintiffs' remaining claims shall proceed. Additionally, Defendant's motion for a more definite statement is **DENIED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND